UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMILA FIGGURES,<br><br>　　　　　　　　　　　Plaintiff,<br>　-against-<br><br>THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, and "JOHN DOE NO.1" through "JOHN DOE NO. 10," the names of the "John Doe" defendants being ficitious names, the real names being unknown to Plaintiff at this time, and being intended to designate the individuals who participated in the acts complained of in this action,<br><br>　　　　　　　　　　　Defendants. | Civ. Action No.: _____<br><br>**COMPLAINT** |

Plaintiff Jamila Figgures ("Plaintiff"), by her attorneys, John V. Janusas, Esq., as and for her complaint, alleges:

### Nature of the Case

1. This is an all-too-familiar story of abusive and overzealous policing.

2. On June 16, 2019, Plaintiff, a petite, 116-pound individual who was waiting in the 79th Precinct in Brooklyn, New York, to collect the personal belongings of a friend who had been arrested, was erroneously grouped with a number of hecklers who entered the precinct from the street—and who Plaintiff had no association with—and thrown to the floor, in the air, and otherwise aggressively, with excessive force, restrained and

handcuffed (both her arms and legs) by six or seven officers (the "Unlawful Arrest") without any basis whatsoever. These officers, knew, or should have known, that Plaintiff was not associated with the hecklers—if not before they began engaging with her, then certainly after she repeatedly protested and told them so.

3.  After the Unlawful Arrest, Plaintiff was thrown into a holding cell for hours (with hands and feet handcuffed) where she remained for hours without being charged, or even told why she had been arrested, only to later be charged with obstructing governmental administration and resisting arrest—patently false and baseless claims.

4.  Plaintiff brings this action to hold defendants accountable for their actions, and to seek redress for the many violations of her rights under the United States Constitution as well as for the serious physical and emotional injuries she sustained as a result of the excessive force used in the Unlawful Arrest.

## Jurisdiction and Venue

5.  This is action is brought under 42 USC. §§1983, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution.

6.  Jurisdiction is conferred upon this Court by 28 USC §§1331, 1343, and 1367.

7.  Venue is proper under 28 U.S.C. §§1391(a)(b) and (c), as the events giving rise to the claims in this action occurred within the Eastern District of New York, and one or more defendants are subject to personal jurisdiction in this district.

## The Parties

8.  Plaintiff is an individual who resides in Brooklyn, New York.

9. The City of New York (the "City") is a municipal corporation created and existing under the laws of the State of New York, and is authorized to maintain a police department known as the New York City Police Department ("NYPD" and together with the City, "Defendants"), which acts as its agent and for which it is responsible.

10. John Doe Nos. 1 through 10 (the "John Does"), whose identities are currently unknown to Plaintiff, are the NYPD police officers who participated in the Unlawful Arrest and/or failed to intervene to prevent the Unlawful Arrest, and harm caused by it.

### Facts Common to All Claims

*Events Leading to the Unlawful Arrest*

11. In the evening of June 15, 2019, Plaintiff was an attendee at a social gathering (the "Gathering") in the Bedford Stuyvesant neighborhood of Brooklyn, New York.

12. This Gathering was interrupted and/or broken up by numerous NYPD officers, seemingly with any real justification, and several individuals were arrested. Plaintiff was *not* one of them.

13. However, one of Plaintiff's acquaintances was tased and, ultimately, arrested. After being arrested, this acquaintance asked Plaintiff to collect his personal belongings for safe keeping.

14. Plaintiff graciously agreed to help this acquaintance, despite not being close with him. Plaintiff was told by NYPD officers that this acquaintance was being taken to the 79th Precinct and that she could collect his personal effects for him so long as she came to the precinct herself. And so Plaintiff did just that.

*The Unlawful Arrest and the Waiting Area Fiasco*

15. Early in the morning (after midnight) now on June 16, 2019, Plaintiff arrived at the 79th Precinct and entered its public entranceway.

16. At the time, there were approximately eight people that had been arrested from the Gathering, who were all handcuffed and waiting behind and/or to the side of the desk/podium. Plaintiff's acquaintance was not in that group. There were also a few other unidentified individuals in handcuffs (the "Unidentified Arrestees"), and around three NYPD officers, who were also behind and/or to the side of the desk/podium.

17. No one was in the waiting area between the precinct's front door and the podium/desk.

18. Plaintiff approached the NYPD officer waiting at a desk/podium. She told the NYPD officer that she was there to collect her acquaintance's belongings and gave the officer the individual's name. The NYPD officer at the desk/podium left and retrieved an NYPD sergeant.

19. The NYPD sergeant told Plaintiff that he needed to find who her acquaintance's arresting officer was so that the items could be collected. Plaintiff was told to wait.

20. Shortly thereafter, approximately four of five men (the "Hecklers") entered the public entranceway of the precinct. These individuals were not from the Gathering, but seemed to know the Unidentified Arrestees.

21. The Hecklers then proceeded to call out to their friends, *i.e.*, the Unidentified Arrestees, and otherwise cause a commotion.

22. Plaintiff moved away from the Hecklers as NYPD officers, including one tall male NYPD officer (the "Initiating Officer") entered the area and told the Hecklers *and Plaintiff* to leave.

23. Plaintiff explained to the Initiating Officer she was not with the Hecklers and that she was waiting for an NYPD sergeant to return.

24. The Initiating Officer refused to listen to Plaintiff, and became aggressive, angry, and yelled at Plaintiff to "get the fuck out." Plaintiff plead, and repeated several times that she was not with the Hecklers and tried to sit down in a chair; the Initiating Officer would not listen.

25. The Initiating Officer then aggressively grabbed Plaintiff and began flinging her around, up in the air, and on the ground—while Plaintiff screamed in protest. He retrieved his handcuffs, and six or seven officers came and participated in the Unlawful Arrest. Eventually, these NYPD officers handcuffed her arms and legs.

26. Not a single NYPD officer, including those in the waiting area that most certainly knew that Plaintiff had no relationship with the Hecklers, did a thing to stop the Unlawful Arrest, or the use of completely unnecessary, unreasonable, and excessive force on Plaintiff.

*Plaintiff is Thrown in a Holding Cell and Left for Hours*

27. After the Unlawful Arrest—and without being told why she was being arrested—Plaintiff was thrown in a holding cell, where she was left for hours.

28. Plaintiff was left battered, bruised, scratched, and with swollen ankles from the excessively tight—and totally unnecessary—ankle cuffs. Defendants completely and

utterly ignored her physical condition, her complaints, and simply left her to suffer (not just physically, but emotionally as well).

29. The next morning Plaintiff was booked by an arresting officer who was not even on duty the night before. She eventually went before a judge.

30. Plaintiff would learn that morning that she was being charged with obstructing governmental administration and resisting arrest. She was released the same day.

31. At a court date in September 2019, because Plaintiff, who had never been convicted of a crime in her life, felt pressured and scared about having been charged with such an offense, she felt she had no choice but to agree to an "adjournment in contemplation of dismissal" to avoid months of stress, headaches, court dates, and problems associated with fighting the charges, as unfounded as they were.

32. Needless to say, Plaintiff—who was simply in the wrong place at the wrong time, and who was only at the precinct because she was trying to do the right thing by helping a friend—has been left traumatized, and has had to seek psychiatric/mental counseling, by this entirely avoidable experience.

### *All Pre-Conditions to this Suit Have Been Met*

33. Within 90 days of the Unlawful Arrest, on or about September 12, 2019, Plaintiff served a notice of claim upon Defendants.

34. On June 30, 2020, Plaintiff appeared at a hearing under General Municipal Law Section 50-h and was questioned at length by counsel for Defendants.

35. More than thirty (30) days have elapsed since that time and Defendants have failed or refused to negotiate or adjust this claim.

36. This action is being brought within one year and ninety days of the Unlawful Arrest.

### First Cause of Action
(42 USC §1983, Fourth Amendment – Excessive Force)

37. Plaintiff repeats and re-alleges all prior paragraphs as if fully set forth herein.

38. Under the Fourth Amendment to the United States Constitution, Plaintiff has the right to be secure in her person against unreasonable searches and seizures.

39. This is includes the right not to be subjected to unreasonable, excessive, or disproportionate force by police officers.

40. As set forth above, Defendants intentionally used entirely unreasonable, excessive, and disproportionate force during the Unlawful Arrest, with a reckless disregard for the consequences of their actions, and without the requisite justification or basis.

41. Plaintiff, a 5'1" 116 pound individual, should never have been subjected to the level of force used by the Initiating Officer and the other six to seven NYPD officers that restrained and flung Plaintiff. Nor were hand and ankle cuffs necessary, and most certainly not after Plaintiff was put in a holding cell.

42. Thus, Defendants, acting under the color of law, deprived Plaintiff of her rights and privileges secured by the United States Constitution, including the Fourth Amendment.

43. Defendants' actions further caused Plaintiff to suffer serious physical and emotional pain and suffering.

44. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, but not less than $2,000,000, plus costs, interest, and attorneys' fees.

45. In addition, because Defendants' conduct, as described above, was intentional, willful, knowing, malicious, wanton, and reckless so as to demonstrate conscious indifference to and utter disregard for its effects upon the rights of Plaintiff, punitive damages should be awarded against Defendants in an amount to be determined at trial but not less than $2,000,000.

### Second Cause of Action
(42 USC §1983, Fourth and Fourteenth Amendments – Wrongful Arrest)

46. Plaintiff repeats and re-alleges all prior paragraphs as if fully set forth herein.

47. Defendants wrongfully arrested, detained, and deprived Plaintiff of her liberty without justification or cause and against her will and in violation of the Fourth Amendment to the United States Constitution by virtue of the Unlawful Arrest.

48. Defendants' actions deprived Plaintiff of her liberty, and subjected to her to serious physical and emotional pain and suffering.

49. The Unlawful Arrest, which was unfounded and without cause, was also done without due process of law.

50. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, but not less than $2,000,000, plus costs, interest, and attorneys' fees.

51. In addition, because Defendants' conduct, as described above, was intentional, willful, knowing, malicious, wanton, and reckless so as to demonstrate conscious indifference to and utter disregard for its effects upon the rights of Plaintiff, punitive

damages should be awarded against Defendants in an amount to be determined at trial but not less than $2,000,000.

### Third Cause of Action
(42 USC §1983 – Failure to Intervene)

52. Plaintiff repeats and re-alleges all prior paragraphs as if fully set forth herein.

53. Defendants and the John Does, were observing and were aware of the Unlawful Arrest, including the fact that Plaintiff was not associated with the Hecklers and/or had not engaged in any action that warranted being detained and deprived of her liberty.

54. Defendants and John Does nevertheless failed to intervene or to stop or limit the force used and harm caused—despite having ample opportunity to do so—both before the Unlawful Arrest, and after Plaintiff was taken into custody.

55. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, but not less than $2,000,000, plus costs, interest, and attorneys' fees.

56. In addition, because Defendants' conduct, as described above, was intentional, willful, knowing, malicious, wanton, and reckless so as to demonstrate conscious indifference to and utter disregard for its effects upon the rights of Plaintiff, punitive damages should be awarded against Defendants in an amount to be determined at trial but not less than $2,000,000.

### Fourth Cause of Action
(42 USC §1988 – Attorneys' Fees)

57. Plaintiff repeats and re-alleges all prior paragraphs as if fully set forth herein.

9

58. Under 42 USC §1988(b), upon prevailing in any action brought to enforce any provision of 42 USC §1983, Plaintiff is entitled to reimbursement of her reasonable attorneys' fees incurred in doing so.

59. According, upon prevailing in this action, Plaintiff is entitled to reimbursement of her reasonable attorneys' fees incurred in connection with enforcing the provisions of 42 USC §1983 against Defendants.

60. By reason of the foregoing, upon prevailing in this action, Plaintiff is entitled to reimbursement of all her reasonable attorneys' fees.

**WHEREFORE**, Plaintiff respectfully requests judgment against the Sponsor as follows:

A.   On the First Cause of Action, a judgment awarding money damages in an amount to be determined at trial, but not less than $2,000,000, plus $2,000,000 in punitive damages, together with interest, costs, and attorneys' fees,;

B.   On the Second Cause of Action, a judgment awarding money damages in an amount to be determined at trial, but not less than $2,000,000, plus $2,000,000 in punitive damages, together with interest, costs, and attorneys' fees;

C.   On the Third Cause of Action, a judgment awarding money damages in an amount to be determined at trial, but not less than $2,000,000, plus $2,000,000 in punitive damages, together with interest, costs, and attorneys' fees;

C.   On the Fourth Cause of Action, awarding Plaintiff her reasonable attorneys' fees, incurred in connection with enforcing a claim under 42 USC §1983; and

D.   Granting Plaintiff such other and further relief against Defendants as the Court deems just and proper.

Dated: New York, New York
       September 11, 2020

*John V. Janusas*
JOHN V. JANUSAS
Attorney for Plaintiff
26 Court Street, Ste. 2511
Brooklyn, New York 11242
(718) 624-5760
Email:  johnjanusas@gmail.com

10